# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN BUILDERS INSURANCE COMPANY, | ) ) ) | CIVIL ACTION NO. 3:15-cv-00295 |
| Plaintiff, | ) ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| CUSTOM INSTALLATIONS CONTRACTING SERVICES, INC. | ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF LABOR & INDUSTRY and UNINSURED EMPLOYERS GUARANTY FUND, | ) ) ) ) ) ) | |
| Intervenor Defendants. | ) ) | |

## MEMORANDUM OPINION

I. Introduction

Before the Court is Plaintiff American Builders Insurance Company's ("American") Partial Motion for Summary Judgment as to Count II of its Amended Complaint. (ECF No. 105.) Count II of Plaintiff's Amended Complaint alleges a violation of the Pennsylvania Insurance Fraud statute, 18 PA. CONS. STAT. § 4117(b)(4). Intervenor Defendants—the Commonwealth of Pennsylvania Department of Labor & Industry and the Uninsured Employers Guaranty Fund (collectively, "the Commonwealth")—filed a response to American's motion. (ECF No. 109.)

Defendant Custom Installations Contracting Services, Inc. ("Custom") has not filed a response to this motion. For the reasons that follow, the Court will **DENY** Plaintiff's Motion.

## II. Jurisdiction and Venue

The Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332. American is a citizen of both Delaware and Georgia.[1] Custom is a citizen of Pennsylvania.[2] Thus, there is complete diversity among the parties. Additionally, the amount in controversy exceeds $75,000.[3]

Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because a defendant, Custom, resides in the Western District of Pennsylvania, and a substantial part of the acts giving rise to this suit occurred in the Western District of Pennsylvania.

## III. Background

### A. Factual History

The following facts are undisputed unless noted. This case arises from Custom's 2015 application for workers' compensation coverage with American. American sells workers' compensation insurance policies to Pennsylvania companies. (ECF No. 110 ¶ 2.) Custom describes the work it does as "commercial remodeling," although the specific work that Custom does is in dispute. (ECF No. 22 ¶ 15; ECF No. 108 at 13.)

---

[1] American is incorporated under the laws of Delaware and has its principal place of business at 2410 Paces Ferry Road, SE, Atlanta, Georgia. (ECF No. 22 ¶ 4.)

[2] Custom is incorporated under the laws of Pennsylvania and has its principal place of business at 401 Joseph Street in Northern Cambria, Pennsylvania. (*Id.* ¶ 5.)

[3] As of March 2016, American claimed to have already paid over one million dollars to Scott on Custom's behalf. (ECF No. 22 ¶ 50.)

### 1. Custom's Workers' Compensation Coverage

Since 2012, Custom authorized Ebensburg Insurance Agency ("EIA"), an insurance broker, to secure workers' compensation policies on its behalf. (ECF No. 110 ¶ 4.) From 2012 until 2014, EIA obtained workers' compensation insurance for Custom on an annual basis through the State Workers Insurance Fund ("SWIF"). (*Id.* ¶ 5.)

Beginning in the 2015 policy year, Custom asked EIA to move its workers' compensation insurance from SWIF to a commercial insurer to obtain a different premium and enjoy better customer service. (*Id.* ¶ 9.) On June 15, 2015, Custom completed a Contractors' questionnaire for Lackawanna Insurance Group ("Lackawanna") and returned this questionnaire to EIA for submission. (*Id.* ¶ 12.) On this form, Custom disclosed that its work was evenly split between commercial and remodeling projects and that ten percent of its work involved roofing. (*Id.* ¶ 13; ECF No. 105-1 at 161.) Custom indicated that it does not perform work at heights above two stories and that it utilizes aerial lifts in its work. (ECF No. 110 ¶ 13.) The Commonwealth contends that there is no evidence showing that ten percent of Custom's work involves roofing. (*Id.*)

Additionally, on June 22, 2015, Custom completed a Contractors Supplemental Application for Eastern Alliance Insurance Group ("Eastern") and returned this application to EIA for submission. (*Id.* ¶ 10; ECF No. 105-1 at 160.) In this application, Custom disclosed that fifty percent of its work involved "working on rooftops." (ECF No. 110 ¶ 11.) The Commonwealth again contends that there is no evidence that this disclosure accurately describes the amount of work that Custom does on rooftops. (*Id.*) Eastern contacted EIA on the same day

-3-

EIA submitted the application, and declined to provide a quote for Custom "due to commercial work of 50%, and higher than normal roofing work." (*Id.* ¶ 14; ECF No. 105-1 at 160.)

On May 28, 2015, prior to either Custom or EIA submitting applications for coverage with Eastern or Lackawanna, EIA employee Kurtis DeYulis completed and submitted an initial application to American for workers' compensation coverage on Custom's behalf. (ECF No. 105-1 at 167.) EIA edited the application and re-submitted it on July 17, 2015 after American requested additional information. (ECF No. 109 at 5.) American approved Custom's revised application on the same day. (*Id.*; ECF No. 105-1 at 167.)

In the application, EIA indicated that Custom's work included commercial carpentry, office work, and residential carpentry. (ECF No. 110 ¶ 17.) Custom's application indicated that it did not do any roofing work. (ECF No. 22 ¶ 22.) The application also states three separate times that Custom does not do any work at heights above fifteen feet. (*Id.* ¶¶ 16, 18, 19; ECF No. 105-1 at 154, 157.)

American's application for workers' compensation coverage included a clause stipulating the following:

> Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance or statement of claim containing any material false information or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

(ECF No. 22 ¶ 24.) A Custom agent, Michael Bichko, signed this application. (*Id.* ¶ 25.) Bichko testified that he assumed EIA prepared the application with information it already had on file. (ECF No. 109 at 6-7.) He also testified that he would not have signed the application if he knew that the information it contained was false. (*Id.*)

Mr. DeYulis, who filled out the application for workers' compensation coverage with American, did not fill out the applications for coverage with Lackawanna or Eastern. (ECF No. 109 at 6.) American contends that the disparate figures Custom gave to other potential insurers show that it intentionally provided false information to American. (ECF No. 106 at 6.) However, the Commonwealth alleges that these differences were the result of negligence and a lack of communication between EIA employees. (ECF No. 109 at 15.)

On July 20, 2015, American issued Custom a workers' compensation insurance policy to last one year from the day of issuance. (ECF No. 110 ¶ 21.) American contends that it does not provide workers' compensation insurance for any Pennsylvania company that engages in roofing of any kind. (ECF No. 22 ¶ 11.) American states that it would not have issued Custom a workers' compensation insurance policy if it knew Custom engaged in roofing work. (ECF No. 107 ¶ 26.) The Commonwealth notes that American's statement about insuring roofers contradicts evidence showing "roofers" as an eligible class for which American insures risks. (ECF No. 109-1 at 10.)

American contends that Custom, through either "mutual mistakes of fact" or intentional misrepresentations, provided false information on its application. (ECF No. 22 ¶ 3, 59; ECF No. 106 at 4-5; ECF No. 107 ¶ 19.) American states that "Custom's answers, which generally misrepresented the nature of its work and specifically misrepresented that it did not perform roofing work or work above the defined height of fifteen feet, contained essential facts that formed the inducement for American to issue the Policy to Custom." (ECF No. 22 ¶ 26.) Custom admits that the answers it provided on the application were inaccurate. (*Id.*) The Commonwealth, however, alleges that Custom never intentionally provided false information to American. (ECF No. 109 at 14-15; ECF No. 110 ¶ 19.) Instead, it argues that the inaccuracies were

only the result of negligence or miscommunications between Custom and EIA. (*Id.*) EIA employees testified that they did not obtain any new information from Custom on the scope of their work. (ECF No. 110 ¶ 16.) The Commonwealth instead alleges that EIA relied on information in prior SWIF applications and policies to fill out the application on Custom's behalf, and never confirmed with Custom that the information was still correct. (*Id.*; ECF No. 109 at 5.)

### 2. Scott's Accident and Workers' Compensation Coverage

On the morning of September 8, 2015, eighteen-year-old Custom employee James Scott, Jr. sustained serious and life-threatening injuries when he fell approximately twenty-five feet through a skylight while "on a roof doing repairs." (ECF No. 22 ¶ 48; ECF No. 105-1 at 169.) Scott was not wearing OSHA-required safety equipment when he fell, as Custom employees were still in the process of setting up "tie-offs" when the accident occurred. (ECF No. 105-1 at 169, 178.) Scott promptly filed for workers' compensation benefits following the accident. (ECF No. 22 ¶ 49.)

American promptly began to investigate Scott's injury. (ECF No. 109 at 7.) On September 15, 2015, American filed a Notice of Temporary Compensation Payable with the Pennsylvania Department of Labor & Industry, which allowed American to initiate compensation payments to Scott for ninety days without prejudice or admitting liability. (*Id.*) Two weeks later, an adjuster from American began to prepare a Loss Control Report regarding Scott's accident. (ECF No. 105-1 at 178.) In this report, the adjuster noted that Scott did not have personal fall protection in place at the time of the accident. (*Id.*) Later, American visited the job site where the accident took place and sent Custom a memo with recommendations for safety improvements. (ECF No. 109 at 8.)

On October 8, 2015, American filed a Notice of Compensation Payable ("NCP") with the Pennsylvania Department of Labor & Industry. (*Id.*)

## B. Procedural History

On November 16, 2015, approximately five weeks after filing the NCP, American filed suit seeking to rescind Custom's workers' compensation insurance policy due to alleged "false and material misrepresentations it made during the policy application process." (ECF No. 1 ¶ 1.) American also sought money damages for statutory insurance fraud, which is the claim at issue here. (*Id.*) American filed an amended complaint in March of 2016, seeking "a declaration from this Court that it is entitled to rescind the Policy based on judicially admitted essential and material mutual mistakes of fact." (ECF No. 22 ¶ 9.)

In August 2016, after some discovery, American moved for partial summary judgment on its rescission claim. (*See* ECF No. 29.) This Court initially granted that motion after Custom indicated that it did not oppose the motion (ECF No. 32), thereby rescinding the workers' compensation policy between American and Custom on September 7, 2016. (ECF No. 33.)

At the same time, however, another judicial proceeding was taking place before a Pennsylvania Administrative Law Judge (ALJ) relating to the workers' compensation claim filed by Scott after his accident. (ECF No. 67 at 3.) The other parties involved in this state workers' compensation proceeding were not notified of American's federal court action. (*Id.* at 5.) This Court also was not aware of this state-court proceeding at the time that it granted summary judgment on the rescission claim. (*Id.*) Following the Court's September 2016 judgment, American filed a petition in Scott's workers' compensation case to terminate its obligation to both Custom and Scott. (ECF No. 35 at 4.) The ALJ ultimately deferred ruling on the petition, but

issued a temporary stay which required American to continue paying Scott's medical bills. (ECF No. 67 at 3.) Both Scott's counsel and one of Scott's healthcare providers, UPMC-Mercy, asked the ALJ to require American to cover the funds lost while it, relying on this Court's order, stopped payment of Scott's benefits. (*Id.*)

American then filed a motion for injunctive relief with this Court. (ECF No. 34.) American sought to end any attempts to circumvent the Court's previous order which granted summary judgment and rescission of the policy. (ECF No. 67 at 4.) This Court ordered American to file a supplemental brief addressing significant concerns about the jurisdiction of federal courts and the interests of non-parties, and invited both Scott and UPMC-Mercy to file briefs as well. (ECF No. 36.) UPMC-Mercy withdrew its penalty petition in writing (ECF No. 39), but counsel for Scott filed a brief arguing against American's motion for injunctive relief. (ECF No. 40.)

In November of 2016, after learning of this litigation, the Commonwealth moved to intervene under Federal Rule of Civil Procedure 24. (ECF Nos. 41, 46.) It alleged that it has "a substantial and unique interest in (1) ensuring that workers' compensation insurance companies such as [P]laintiff . . . not evade the Commonwealth's workers' compensation system, and (2) protecting the pecuniary interests of the [Unemployed Insurers Guaranty Fund]." (ECF No. 82 at 1-2.) The Commonwealth sought to intervene or oppose motions by American to rescind its policy to Custom. (*Id.* at 2.) The Commonwealth also argued that American's request for rescission could not be adjudicated in federal court and should instead be addressed through Pennsylvania's workers' compensation process. (*Id.* at 4.)

On August 18, 2017 this Court vacated its prior summary judgment ruling on American's rescission claim and dismissed the claim for lack of jurisdiction. (*See* ECF No. 67.) This Court

concluded that it did not have jurisdiction over American's rescission claim, since it is covered by the exclusivity provision of the Pennsylvania Workers' Compensation Act. (*Id.* at 15.)

Because of this decision, the Court initially denied the Commonwealth's motion to intervene as moot. (*See id.*) The Commonwealth, however, filed a renewed request to intervene in June of 2018 after American stated that it intended to move for summary judgment on the remaining claim. (ECF No. 75.) This Court granted the Commonwealth's renewed motion to intervene in August of 2018. (ECF No. 94.)

American appealed this Court's dismissal of the rescission claim to the Third Circuit. (ECF No. 69.) Before the Third Circuit evaluated their appeal, American obtained deposition testimony from two EIA employees. (ECF No. 109 at 14.) The Commonwealth contends that it was never given formal notice of the depositions and was unable to participate. (*Id.*) On July 9, 2018, The Third Circuit dismissed American's appeal for lack of jurisdiction. (ECF No. 84.)

The present issue before the Court is American's Motion for Partial Summary Judgment on its claim under the Pennsylvania Insurance Fraud statute. (ECF No. 105.) American seeks partial summary judgment on this claim as to liability only. (ECF No. 106 at 2.) Custom has not recently contested American's Motion for Summary Judgment and is no longer defending against American's claims. Custom's attorney, Martin Dietz, stated in a June 2018 hearing that Custom is insolvent and lacks the resources to continue litigating the case. (*See* ECF No. 75; ECF No. 82 at 5.) Because of this, the Commonwealth has filed all materials opposing this motion.

## IV. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v.*

*Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.* 500 F.3d 375, 380 n. 6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. This Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11, (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594

-10-

(3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## V. Discussion

American alleges that Custom violated § 4117(b)(4) of the Pennsylvania Insurance Fraud statute. (ECF No. 22 ¶ 1.) § 4117(b)(4) provides that "[a] person may not knowingly and with intent to defraud any insurance company . . . file an application for insurance containing any false information or conceal for the purpose of misleading information concerning any fact material thereto." 18 PA. CONST. STAT. ANN. § 4117(b)(4). § 4117(b)(4) is a criminal statute that allows insurers to bring civil causes of action for violations of the statute. § 4117(g).

"An insured violates [the statute] 'by: 1) presenting false, incomplete or misleading statements to [the insurer]; 2) that were material to the claim; and 3) knowingly and with an intent to defraud.'" *Allstate Ins. Co. v. Kelly*, No. Civ.A. 3:05-276, 2007 WL 403919, at *4 (W.D. Pa. Feb. 1, 2007) (citing *Hepps v. Gen. Am. Life Ins.*, No. 95-5508, 1998 U.S. Dist. LEXIS 13795, at *10 (E.D. Pa. Sept. 3, 1998)).[4]

Here, American, Custom, and the Commonwealth all acknowledge that EIA provided false information on the application for workers' compensation coverage that was submitted to

---

[4] Courts in the Third Circuit are divided on the burden of proof that applies to statutory claims of insurance fraud based on misrepresentations in a claim application. *Compare Henriquez-Disla*, 2015 WL 1208150, at *4 (holding that the insurance company's "[i]nsurance [f]raud counterclaim is governed by the clear and convincing evidence standard") *with Majestic Box Co. v. Reliance Ins. Co. of Ill.*, No. CIV. A. 96-8118, 1998 WL 720463, at *2 (E.D. Pa. Sept. 2, 1998) (applying the preponderance of the evidence standard). The Court reserves judgment on the burden of proof that will apply at trial to American's claim and finds that, even if the lower "preponderance of the evidence" standard applies, American would still not be entitled to summary judgment.

American. (ECF No. 32; ECF No. 106 at 2; ECF No. 109 at 16.) The Court still must determine, then, whether there are genuine disputes of material fact that (1) the false statements on the application were material to the issuance of the policy, and (2) that Custom provided this false information knowingly and with intent to defraud.

## A. There Is No Genuine Dispute of Material Fact That Custom's False Statements Were Material to the Issuance of the Policy

To be entitled to summary judgment, American must show that the false information that Custom provided to American was material to the issuance of the policy. Generally, "a misrepresentation on an insurance application is material if the 'information would influence the decision of an issuer in the issuance of a policy, assessing the nature of the risk, or setting premium rates.'" *Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 349 F. Supp. 3d 468, 485 (W.D. Pa. Oct. 1, 2018) (quoting *A.G. Allebach, Inc. v. Hurley*, 373 Pa. Super. 41, 540 A.2d 289, 294-95 (Pa. Super. Ct. 1988)).

American has continually asserted that it would not have issued a workers' compensation policy to Custom had it known that Custom performed work on roofs. (ECF No. 22 ¶ 34-35, 43-45; ECF No. 106 at 2.) To support this claim, American submitted the affidavit of Greg R. Krause, the Senior Vice President of Underwriting for Builders' Insurance Group, to which American is a subsidiary company. (ECF No. 110 ¶ 26.) In this affidavit, Mr. Krause averred that "[o]n or shortly before November 3, 2011, American made the decision to no longer write workers' compensation insurance for any risk primarily engaged in roofing of any kind." (*Id.*) Mr. Krause explains the system by which American uses information provided in applications for coverage to determine risk. (*Id.*) Mr. Krause also states that "[h]ad Custom completed the Application

-12-

accurately and disclosed that 50% of its work involved roofing, American would have declined to issue the Policy consistent with its general business policy not to insure roofing risks in Pennsylvania." (*Id.*)

The Commonwealth, however, notes that American has listed "roofers" as a category that it insures. (ECF No. 109 at 17; ECF No. 109-1 at 10.) The Commonwealth cites a document that appears to be a general advertisement for contractors' general liability coverage. (ECF No. 109-1 at 10.) In that advertisement, American includes "roofers" as a class eligible to receive coverage. (*Id.*) The advertisement, however, does not mention anything about whether American provides workers' compensation coverage to companies that perform roofing or work on roofs.

When viewing this evidence in the light most favorable to the Commonwealth, there is no genuine dispute of material fact that the false information that Custom provided in the application was material to the issuance of the policy. American has presented evidence showing that it does not issue workers' compensation policies to companies that perform roofing. The Commonwealth has only provided evidence that American may provide *general liability insurance* to roofers. It has not presented evidence that American provided workers' compensation insurance to companies who perform roofing or work on roofs. This does not create a genuine issue of material fact.

## B. There Are Genuine Disputes of Material Fact as To Whether Custom Provided False Information Knowingly and with Intent to Defraud

The remaining issue before this Court is whether Custom provided false information knowingly and with intent to defraud. Generally, fraud can be presumed where the insured knowingly provides an insurer with false information. *Shafer v. John Hancock Mut. Life Ins. Co.*,

410 Pa. 394, 189 A.2d 234, 236 (1963) (citing *Kizirian v. United States Life Ins. Co.*, 383 Pa. 515, 119 A.2d 47, 49-50 (1956)). "If representations were in fact false and the insured knew of their falsity when the statements were made, the statements are presumptively fraudulent." *Payne v. Allstate Ins. Co.*, No. 11-2546, 2016 WL 6892727, at *4 (E.D. Pa. Nov. 22, 2016) (citing *Shafer*, 189 A.2d at 236). American must demonstrate that Custom, at the time the application was submitted, knew the information it provided was false. American is unable to meet this burden.

American supports its claim by alleging that "[EIA] knowingly submitted the false information in question."[5] (ECF No. 106 at 4-5.) American states that in 2015, Custom provided EIA with forms which clearly state that "its work involved roofing, commercial construction and work above twenty feet and/or two stories." (*Id.* at 6.) The forms, which were completed applications for coverage with Lackawanna and Eastern, both stated that Custom performed some amount of work on roofs.[6] (ECF No. 105-1 ¶ 10-14.) American alleges that "perhaps to avoid additional declinations, EIA purposefully ignored [C]ustom's disclosures regarding the nature of its work, and knowingly misrepresented that Custom engaged in residential carpentry and office work and failed to disclose that Custom performed roofing work above twenty feet/two stories." (*Id.*)

In response, the Commonwealth asserts that EIA submitted information to American that EIA believed to be accurate. (ECF No. 110 ¶ 19.) The Commonwealth first notes that Custom's

---

[5] EIA is an agent of Custom. Custom is thus liable for the actions of EIA. *See Higgins v. Shenango Pottery Co.*, 256 F.2d 504, 509 (3d Cir. 1958) ("[I]t is a rule of agency that the knowledge of the agent is imputed to the principal in connection with any transaction conducted by the agent on behalf of the principal"); *see also General Interest Ins. Co. v. Ruggles*, 25 U.S. 408, 418 (1827) ("It is no doubt true, with respect to policies of insurance, as well to all other contracts, that the principal is responsible for the acts of his agent . . . .").
[6] EIA submitted these applications on June 15, 2015 and June 22, 2015, respectively.

previous SWIF policies from 2012 to 2014, which EIA had on record, did not indicate that Custom performed any roofing work. (*Id.* at 4.) The Commonwealth argues that Mr. DeYulis, who filled out the application for coverage with American, "relied on information in [EIA's] system from the SWIF applications and policies issued during the prior three years," and that "[a]s far as Mr. DeYulis was aware, nobody at [EIA] confirmed that the information was still correct." (ECF No. 109 at 5.) The Commonwealth points out that employees from Custom, not EIA, filled out the applications for workers' compensation coverage with the other two commercial carriers. (*Id.* at 6, 15.) The Commonwealth further notes that Custom completed these applications *after* Mr. DeYulis first completed the application for coverage with American.[7] (*Id.* at 16.)

There is a genuine factual dispute over whether Custom, either directly or through its agent, knew that the information it provided to American was false at the time EIA submitted it. American relies on the applications Custom submitted to Lackawanna and Eastern as evidence that Custom, through EIA, intentionally provided false information on the application it submitted to American. The Commonwealth, however, has shown that EIA submitted the application for coverage with American *before* Custom completed the applications for Lackawanna and Eastern. (ECF No. 105-1 at 167.) While the record does not indicate when Custom returned the completed Lackawanna and Eastern applications to EIA, it does show that EIA submitted those applications several weeks after it first submitted the application for coverage with American. This undermines American's allegation that EIA knowingly submitted

---

[7] EIA first submitted the application for coverage with American on May 28, 2015. (ECF No. 105-1 at 167.) EIA submitted a revised application on July 17, 2015 after American requested more information about matters unrelated to the amount of work on roofs Custom typically performs or the heights at which they work. (*Id.*)

-15-

the false information because other commercial carriers declined to provide Custom with a workers' compensation policy. If Custom did not give these forms to EIA until after the application for coverage with American was first submitted, then EIA employees would not have known that these other commercial carriers would decline coverage. At the summary judgment stage, the Court must infer that when EIA submitted Custom's application to American, EIA did not have knowledge or possession of the applications that Custom submitted to Lackawanna and Eastern.

The Commonwealth also notes that employees from Custom, and not EIA, filled out the applications for coverage with Lackawanna and Eastern. This creates a genuine dispute as to whether EIA submitted Custom's application to American with intent to defraud. First, the record does not indicate that EIA possessed the completed Lackawanna and Eastern applications when it first submitted false information to American. Second, even if Custom provided EIA with the Lackawanna and Eastern applications before EIA submitted false information to American, American has not provided evidence that Mr. DeYulis—who completed the American application—had seen the Lackawanna or Eastern applications or knew of their contents. Mr. DeYulis could have submitted the American application on Custom's behalf without looking at the information Custom provided on the other applications. Mr. DeYulis may have been negligent in failing to verify the accuracy of the information that he submitted to American, but there is no evidence that he acted with an intent to defraud. The Third Circuit has held that district courts should not resolve issues of intent at the summary judgment stage. *See, e.g., Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 523 (3d Cir. 2004) (reversing district court's grant of summary judgment and noting that "[g]enerally an insured's state of mind is an issue of fact for the jury,");

*Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) ("Issues such as intent and credibility are rarely suitable for summary judgment,"); *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 24 (3d Cir. 1985) (citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)) ("Issues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of parties."). Therefore, it would be inappropriate for the Court to conclude at the summary judgment stage that Custom intended to defraud American when its actions could have reasonably been the result of negligence or a failure to effectively communicate with EIA.

Further, because American obtained deposition testimony from two EIA employees before the Commonwealth intervened in this action, the Commonwealth did not have the opportunity to participate in the depositions. (ECF No. 109 at 14.) It would be inappropriate for this Court to grant summary judgment when the Commonwealth cannot yet present the "facts essential to justify its opposition" to the statements made by the deposed EIA employees. F. R. CIV. P 56(d).[8]

Viewing these facts in a light most favorable to the Commonwealth, a reasonable jury could conclude that neither Custom nor EIA knowingly or intentionally submitted false information on the application for workers' compensation coverage with American. The false information that EIA provided in the application reasonably could have been the result of either

---

[8] Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discovery or (3) issue any other appropriate order."

miscommunication or negligence. Neither are sufficient to establish intent to defraud at the summary judgment stage.

## VI. Conclusion

For the reasons explained above, the Court finds that American is not entitled to summary judgment because there is a genuine dispute of material fact as to whether Custom intentionally or knowingly submitted false information to American on its insurance policy application. Accordingly, the Court will **DENY** Plaintiff's motion for summary judgment.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN BUILDERS INSURANCE COMPANY, | ) ) ) | CIVIL ACTION NO. 3:15-cv-00295 |
| Plaintiff, | ) ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| CUSTOM INSTALLATIONS CONTRACTING SERVICES, INC. | ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF LABOR & INDUSTRY and UNINSURED EMPLOYERS GUARANTY FUND, | ) ) ) ) ) ) | |
| Intervenor Defendants. | ) ) | |

### ORDER

AND NOW, this 29th day of July, 2019, upon consideration of Plaintiff's Motion for Summary Judgment (ECF No. 105), **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE